No. 14582

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

LYLE A. MASSARO,

                  Plaintiff and Respondent,

    vs.

DORETTA JANE DUNHAM,

                  Defendant and Appellant.

Appeal from:  District Court of the Eighteenth Judicial District,
              Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Al Frost, Legal Services, Bozeman, Montana

    For Respondent:

        McCabe and Weingartner, Helena, Montana

Submitted on briefs:  November 7, 1979

Decided: NOV 28 1979

Filed: NOV 28 1979

Thomas J. Kearney
                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Doretta J. Dunham appeals from that portion of the findings of fact, conclusions of law and judgment entered by the District Court, Eighteenth Judicial District, Gallatin County, denying her recovery of alleged child support arrearages.

Doretta and Lyle A. Massaro were formerly husband and wife. Their marriage was dissolved on December 23, 1966, in Sheridan, Wyoming.

Pursuant to the marriage dissolution decree and the separation agreement incorporated therein, Doretta was given custody of the parties' two minor children, Sherri and Lyle R. "Ricky" Massaro. Lyle was obligated to pay $100 per month child support and any medical, dental, drug and doctor bill incurred by Doretta in caring for the children when the cost of such bills exceeded twenty-five dollars in a given month.

The evidence in the record of child support payments is sketchy. Lyle was enlisted in the Armed Forces for eight months in 1967 and 1968. A $125 per month allotment was sent to Doretta during this period. In 1969, Lyle furnished $2,000 to Shelby Trailer Court Sales in Casper, Wyoming, for the purchase of a mobile home by Doretta. Lyle has also given gifts of cash and other personalty directly to the children.

Doretta was a patient at the Wyoming State Mental Hospital for three months in 1974 and six months in 1975. During this period, Lyle had custody of Sherri from May 1975 to August 1975 and custody of Ricky from March 1974 to August 1974 and from January 1975 to August 1975.

On November 8, 1976, the District Court, Gallatin County, entered an ex parte order granting the exclusive custody of the children to Lyle with Doretta to have reasonable visitation privileges.

-2-

On January 25, 1978, Doretta filed a petition for modification of visitation rights and complaint for child support arrearages. Doretta alleged Lyle owed $9,600 back child support as of the date of her complaint.

Lyle filed his response and counterclaim on March 17, 1978. Lyle generally denied all claims of Doretta's petition, sought reaffirmation of the prior ex parte custody order and requested an order permanently restraining Doretta from harassing the Massaro family.

Lyle moved for a continuance on May 30, 1978, one day prior to the original trial date. The ground of the motion was that Sherri, an essential witness, had run away from the Massaro household and could not be located. The motion was granted, and the cause was reset for trial on June 12, 1978.

The District Court entered its findings of fact and conclusions of law on July 5, 1978. Specifically, the District Court concluded Doretta had failed to prove the amount of back child support claimed as owing to her by Lyle.

On August 16, 1978, Doretta filed a motion to amend the findings of fact and conclusions of law or, in the alternative, for a new trial. The motion was denied.

Doretta next applied to the District Court for an order permitting her to appeal in forma pauperis. The petition was denied. However, we granted Doretta leave to appeal in forma pauperis on November 22, 1978.

Doretta raises three issues upon this appeal:

1. Did the District Court properly apply the rules regarding burden of proof and the burden of producing evidence?

2. Is there sufficient evidence to support the District Court's judgment concerning delinquent child support?

3. Does the District Court judgment violate section 40-4-208, MCA, prohibiting retroactive modification of child support payments?

-3-

Having found an abuse of the discovery rules, we will not reach these issues. <u>See</u>, Rule 2, Mont.R.App.Civ.P.

On April 6, 1978, Doretta served Lyle with written interrogatories, a request to produce documents and requests for admission. Generally, Doretta sought any evidence that Lyle might use at trial to establish due payment of child support.

In her requests for admission, Doretta asked Lyle to admit he owed an obligation to pay $100 per month child support pursuant to the decree of dissolution of marriage and the separation agreement incorporated therein. Doretta also requested Lyle to admit Doretta had been granted reasonable visitation privileges pursuant to the District Court's ex parte order.

On April 12, 1978, Lyle requested additional time to respond to the discovery. Doretta agreed to the extension in a letter dated April 17, 1978.

On May 31, 1978, Doretta's counsel by telephone requested a response to the discovery. Lyle's counsel gave assurances that a response would be forthcoming.

Lyle's counsel never responded to the written interrogatories or the request for production of documents. The reason given at trial was that counsel's secretary was on vacation and the response to discovery had been overlooked.

On May 31, 1978, Lyle filed objections to the requests for admissions. The ground of the objection was that Doretta had failed to attach or serve copies of the marriage dissolution decree, separation agreement or ex parte order to the requests for admissions, and therefore, Lyle specifically denied the authenticity and truth of any provision contained therein.

-4-

Yet, at trial when Doretta moved for the admission of certified copies of the requested documents, Lyle's counsel responded, "I think they're part of the record already, Your Honor, and don't need to be admitted specifically."

At the trial, Doretta objected to and sought restriction of the expected proof by Lyle concerning visitation and delinquent child support. The ground of the objection was failure to respond to discovery. The motion was taken under advisement and later denied.

Lyle asserts his failure to respond to discovery is not objectionable since Doretta failed to move for an order compelling discovery. We do not agree.

The District Court has the inherent discretionary power to control discovery. That power is based on the District Court's authority to control trial administration. See, State v. Mecca Twin Theater & Film Exchange, Inc. (1973), 82 Wash.2d 87, 507 P.2d 1165, 1167. In controlling discovery, the District Court must regulate traffic to insure a fair trial to all concerned, neither according one party an unfair advantage nor placing the other party at a disadvantage. State v. Boehme (1967), 71 Wash.2d 121, 430 P.2d 527, 534.

We will reverse the District Court only when its judgment may materially affect the substantial rights of the appellant and allow the possibility of a miscarriage of justice. Wolfe v. Northern Pacific Railway Co. (1966), 147 Mont. 29, 41, 409 P.2d 528, 534. We find such a situation here.

The purpose of discovery is to promote the ascertainment of truth and the ultimate disposition of the lawsuit in accordance therewith. Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation.

-5-

Hickman v. Taylor (1947), 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451, 460.

In the instant case, Lyle's counsel gave assurances that a response to discovery would be forthcoming and then never responded. Considering Doretta's past mental condition, her counsel was correct in expecting Lyle to be the only party with accurate records of past child support payments. However, due to the failure to respond to discovery, Doretta's counsel had no opportunity to inspect and prepare for any proof of past child support payments. Thus, the District Court failed to regulate the discovery process and accorded an unfair advantage to Lyle.

Lyle's answers to the requests for admission likewise do not comport with the good faith requirement inherent in the rules of discovery.

Rule 36(a), Mont.R.Civ.P., does require the attachment of a copy of a document when the genuineness of that document is the matter sought to be admitted. The purpose of this requirement is to give the responding party an opportunity to compare the copy with the original to determine its validity. This purpose would not be served by giving credence to Lyle's objections.

Rule 36(a), Mont.R.Civ.P., requires a denial of a request for admissions to fairly meet the substance of the requested admission. The responder must admit or deny with particularity if the truth can be ascertained by reasonable inquiry. 2(A) Barron & Holtzoff, Federal Practice and Procedure, §834, at 513-15. An evasive answer is to be treated as a failure to answer, an admission. Rule 37(a)(3), Mont.R.Civ.P.

Lyle's answers should have been treated as admissions since they were evasive and did not comport with the purposes of Rule 36 and discovery in general.

-6-

Thus, when Lyle refused to admit the matter set forth in Doretta's request, her counsel was put to the trouble and expense of procuring certified documents of instruments already in the possession of Lyle, the contents of which should have been well-known to him. We cannot condone such evasiveness, nor overlook the fact that opposing counsel was forced to accumulate documents for evidence which should not have been in dispute.

The failure of Lyle to respond to the interrogatories prejudiced Doretta's counsel in preparing for trial. Certainly the sketchy evidence of support payments in the record, which in our opinion is insufficient to deny a money judgment in some amount to Doretta is the result of the evasiveness of Lyle's counsel in properly responding to the interrogatories.

That portion of the District Court's judgment pertaining to delinquent child support is reversed. The cause is remanded for further proceedings in accordance with this opinion. This may or may not include further discovery.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices