IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 07-0348

FILED

AUG 2 2 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

THE ESTATE OF CHRISTINE KEARNEY; by
and through her Personal Representative, MANDY
KEARNEY; and individually LEE KEARNEY,
MANDY KEARNEY, Clay Kearney, and C.J.
KEARNEY,

Petitioners,

ORDER

v.

THE MONTANA THIRTEENTH JUDICIAL
DISTRICT COURT , AND THE HONORABLE
GREGORY TODD, PRESIDING JUDGE,

Respondents.

Before this Court is a Petition for Writ of Supervisory Control filed by the Estate of Christine Kearney, et al. (the Estate) in a medical malpractice, wrongful death lawsuit against David Healow, M.D., and Pain Control Consultants, P.C. (collectively, "Dr. Healow"). In its petition, the Estate asks this Court to reverse an Order of the District Court for the Thirteenth Judicial District, Yellowstone County, denying the Estate's requests for discovery of any information relating to other substantially similar deaths involving Dr. Healow's patients.

Christine Kearney (Christine) suffered from multiple sclerosis. During her illness, Dr. Healow prescribed methadone and other drugs to deal with Christine's chronic pain. After Christine died, the Estate sued Dr. Healow claiming that the amount of methadone he had prescribed for Christine was excessive and lethal.

In his defense, Dr. Healow denied foreseeability, notice, standard of care and causation. In particular, he denied that he should have known the amounts of medication he prescribed were potentially excessive and lethal; that the dosage would lead to fatal heart

1

arrhythmia; that he should have advised Christine of the risks of the dosage or more carefully monitored her use of the prescribed medication; and that Christine's dosage resulted in her death. During discovery, the Estate requested that Dr. Healow provide information regarding other chronic pain patients who died under similar circumstances. Dr. Healow objected on the basis that the requests were overly broad, unduly burdensome, irrelevant, immaterial, vague, ambiguous, and called for confidential patient information. Dr. Healow also refused to produce patient files with the identifying information redacted, and he moved for a protective order.

On April 12, 2007, following oral argument, the District Court issued an order denying the Estate's motion to compel and granting Dr. Healow's motion for a protective order. The Estate moved the District Court to reconsider, but the court refused.

Thereafter, the Estate notified Dr. Healow that it intended to run a public notice in *The Billings Gazette* asking for information on any patients who may have died from prescribed pain medications. Although the notice did not mention Dr. Healow or Pain Control Consultants, P.C., Dr. Healow moved for a preliminary injunction asking the court to enjoin publication of the notice. In response, the Estate requested that the District Court sanction Dr. Healow for his "continual refusal to permit discovery into Dr. Healow's past and because [his] current motion for injunctive relief is frivolous." The District Court denied both Dr. Healow's request for an injunction and the Estate's request for sanctions.

The Estate then brought this petition asking this Court to exercise supervisory control over the District Court for the purpose of reversing that court's orders. In its petition, the Estate argues that the District Court's orders are in fundamental error and that the Estate lacks an adequate remedy of appeal.

This Court exercises supervisory control in appropriate cases pursuant to the authority granted in Article VII, Section 2(2) of the Montana Constitution and M. R. App. P. 17(a). *Inter-Fluve v. Eighteenth Jud. Dist. Court*, 2005 MT 103, ¶ 17, 327 Mont. 14, ¶ 17, 112 P.3d 258, ¶ 17. Supervisory control is an extraordinary remedy that is only appropriate where the district court is proceeding based on a mistake of law which, if uncorrected, would cause

significant injustice for which an appeal is not an adequate remedy. *Inter-Fluve*, ¶ 17. Consequently, we have followed the practice of proceeding on a case-by-case basis while taking care not to substitute supervisory control for an appeal. *Inter-Fluve*, ¶ 17.

In the instant case, the Estate asks this Court to exercise its supervisory authority and reverse the District Court's order denying the Estate's request for discovery of any information relating to other substantially similar deaths involving Dr. Healow's patients.

"The purpose of discovery is to promote the ascertainment of truth and the ultimate disposition of the lawsuit in accordance therewith. Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation." *Richardson v. State*, 2006 MT 43, ¶ 22, 331 Mont. 231, ¶ 22, 130 P.3d 634, ¶ 22 (quoting *Massaro v. Dunham*, 184 Mont. 400, 405, 603 P.2d 249, 252 (1979)). "Modern instruments of discovery, together with pre-trial procedures, 'make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' " *Richardson*, ¶ 22 (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 986-87 (1958)).

We addressed the propriety of supervisory control in the discovery context in *Preston v. MT 18th Judicial Dist. Court*, 282 Mont. 200, 936 P.2d 814 (1997). In *Preston*, we issued a writ of supervisory control to correct the District Court's decision to limit discovery in a product liability case to the subject product. The plaintiff in *Preston* had requested evidence of prior accidents involving similarly designed products, which the District Court declined to order. Noting that such information was relevant to the plaintiff's burden of proof, we held that a writ of supervisory control was appropriate to correct the discovery limitation because the District Court was proceeding under a mistake of law which did a gross injustice to the plaintiff by placing him at a significant disadvantage in litigating his case, and remedy by appeal would be inadequate. *Preston*, 282 Mont. at 206, 936 P.2d at 818.

We also stated in *Plumb v. Fourth Jud. Dist. Court*, 279 Mont. 363, 370, 927 P.2d 1011, 1016 (1996), that where the district court's order places a litigant at a significant disadvantage and causes the litigant to incur unwarranted expenses and delays in the ultimate

resolution of the litigation, the exercise of supervisory control is just. Moreover, if settlement negotiations would be hindered, then any verdict reached would be questionable, subsequent litigation and additional costs would be inevitable, and a remedy by appeal would be inadequate. *Plumb*, 279 Mont. at 370, 927 P.2d at 1016.

As part of its case-in-chief, the Estate must prove that Dr. Healow knew of the risk of death, failed to take corrective action, and that the medications resulted in Christine's premature death. The Estate points out in its petition that evidence from Dr. Healow's files that there had been prior deaths under substantially similar circumstances would be highly probative, if not determinative, of these issues. The Estate further states that the requested information is critical to challenge Dr. Healow's defenses because Dr. Healow is asserting that he did not know the prescribed medication was potentially fatal, the prescribed dose was consistent with medical standards, and Christine's use of the medication was not the cause of her death. Failure to provide the requested information may hinder the Estate's ability to prove causation or breach and to engage in effective cross examination and impeachment.

The purpose of the physician-patient privilege is to insure the patient will receive the best medical treatment possible by encouraging full and frank disclosure of medical history and symptoms by a patient to his or her doctor. However, that privilege should not be used to deny patient victims the ability to discover unsafe physicians or medical practices. The Health Insurance Portability and Accountability Act (HIPAA), specifically 45 C.F.R. § 164.508 (2007) and 45 C.F.R. § 164.512(e)(1) (2007), permits the disclosure of protected health information without patient consent in the course of any judicial or administrative proceeding, if the party seeking the information makes reasonable efforts to secure a qualified protective order limiting use of the information to the subject proceeding.

In this case, the Estate suggested that any identifying information could be redacted from the patient files. However, Dr. Healow asserted, and the District Court agreed, that redaction of identifying information would not solve any problems with respect to doctor-patient privilege or right of privacy because the Estate would eventually need to ask for patient identities in order to contact those individuals and ask them to testify at trial.

4

The District Court's observation that the requested information is protected by Montana's Uniform Health Care Information Act, Title 50, Chapter 16, Part 5, of the Montana Code Annotated, is not entirely correct. Health care information includes only that information which identifies or can readily be associated with the identity of a patient and relates to the patient's health care. Section 50-16-504(6), MCA. If that identifying information is redacted, as suggested by the Estate, the information sought would not even be considered health care information under this Act.

Additionally, the Estate points out that Dr. Healow and the District Court are confusing the issue of the "discoverability" of prior bad acts with the "admissibility" of such evidence. M. R. Civ. P. 26(b)(1) provides, in pertinent part: "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, we stated in *Preston*, that "discovery requests are to be construed broadly in favor of disclosing any information tending to lead to admissible evidence. Whether that evidence is admissible is for the court to decide at trial, not for [the defendant] to determine at the discovery stage of proceedings." *Preston*, 282 Mont. at 208, 936 P.2d at 819.

We have repeatedly held that discovery into a defendant's prior conduct is proper. *Preston*, 282 Mont. at 207, 936 P.2d at 818; *Runkle v. Burlington Northern*, 188 Mont. 286, 292, 613 P.2d 982, 986 (1980); *Schmidt v. Washington Contractors Group*, 1998 MT 194, ¶ 25, 290 Mont. 276, ¶ 25, 964 P.2d 34, ¶ 25. We stated in *Richardson* that evidence of prior accidents " 'is nevertheless admissible to show the existence of a danger or defect and notice or knowledge thereof' [and that] '[e]vidence of prior, similar accidents can have significant probative force bearing upon the question of the reasonableness of defendant's conduct.' " *Richardson*, ¶ 26 (quoting *Kissock v. Butte Convalescent Center*, 1999 MT 322, ¶¶ 15-16, 297 Mont. 307, ¶¶ 15-16, 992 P.2d 1271, ¶¶ 15-16). Furthermore, evidence of prior accidents is "clearly relevant to the issues of whether a danger did in fact exist, whether [defendant] had knowledge of the danger, whether [defendant's] conduct was reasonable in light of any such knowledge, and whether [defendant] should have anticipated [plaintiff's]

injury." *Richardson,* ¶ 28.

The Estate has the burden at trial to show that evidence of prior acts is substantially similar to the putative conduct at issue. Without discovery into prior patient deaths, the Estate has no ability to carry that burden. The Estate also cannot challenge Dr. Healow's anticipated testimony that in his opinion and *based upon his experience,* the drugs prescribed to Christine were safe as prescribed. In addition, the Estate cannot develop a claim for punitive damages without showing from prior patient deaths whether Dr. Healow's conduct toward Christine was in complete disregard for her safety and the safety of others.

We conclude that supervisory control is appropriate in this case because the District Court is proceeding under a mistake of law. The District Court improperly prejudged issues about admissibility before discovery into these areas was completed. No individual patients' rights are infringed by the release of medical information that cannot be identified with them. Physicians and public health agencies publish studies or statistics of patients all the time without releasing the patients' identities and often without obtaining the patients' consent. Allowing the District Court's discovery restrictions to stand would not only unfairly disadvantage the Estate but would defeat the purposes of the Rules of Civil Procedure in that it would require the Estate to endure the time and expense of a trial and an appeal before obtaining discoverable material essential to its case.

To the extent that any of the discovery requests are actually overbroad or burdensome, the District Court can craft an appropriate discovery order. In addition, we are not addressing the matter of the injunction request or the request for sanctions, pending the District Court's compliance with the foregoing provisions of this Order. Therefore,

IT IS ORDERED that the Estate's Petition for Writ of Supervisory Control is GRANTED. The District Court shall craft an order permitting the Estate's requested discovery while protecting the disclosure of information that would identify an individual patient and limiting any legitimately overbroad or burdensome requests for information.

IT IS FURTHER ORDERED that the Clerk of this Court give notice of this Order by mail to all counsel of record and to the District Court.

DATED this 22nd day of August, 2007.

_Karla M. Gray_
Chief Justice

_Jim Rice_

_Patricia Cotter_

_John Warner_

_Jim Rice_
Justices